

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JONATHAN MULLANE,
6 Bennett Street
Cambridge, MA 02138
Tel.: (617) 800-6925

        Plaintiff,

v.

UNITED STATES DEPARTMENT
OF JUSTICE,
950 Pennsylvania Avenue NW
Washington, DC 20530

and UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,
100 F Street NE
Washington, DC 20549

        Defendants.

Docket No. _____

Case: 1:21-cv-02151
Assigned To : Walton, Reggie B.
Assign. Date : 8/11/2021
Description: FOIA/Privacy Act (I-DECK)

BENCH TRIAL REQUESTED

## VERIFIED COMPLAINT

COMES NOW Plaintiff Jonathan Mullane (hereinafter, "Plaintiff"), and complaining of Defendants United States Department of Justice (hereinafter, "DOJ") and United States Securities and Exchange Commission (hereinafter, "SEC") (collectively, "Defendants"), hereby brings this action for declaratory and injunctive relief, together with the appropriate monetary damages. As and for his complaint, Plaintiff avers the following:

### PARTIES

1. Plaintiff Jonathan Mullane is a citizen of the United States and of the Commonwealth of Massachusetts, and permanently resides in that jurisdiction.

2. Defendant United States Department of Justice ("DOJ") is a covered federal "agency" within the meaning of 5 U.S.C. § 552a.

3. Defendant United States Securities and Exchange Commission ("SEC") is a covered federal "agency" within the meaning of 5 U.S.C. § 552a.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over this "federal question" action pursuant to 5 U.S.C. § 552a(g)(1), 28 U.S.C. § 1331, and U.S. Const., Art. III.

5. Venue is proper in this District pursuant to, *inter alia*, 5 U.S.C. § 552a(g)(5) and 28 U.S.C. § 1391.

6. The Privacy Act claim asserted herein is timely because: (1) PA claims are subject to equitable tolling[1] under federal common law, see, e.g., Chung v. United States DOJ, 357 U.S. App. D.C. 152, 333 F.3d 273 (2003); and (2) under the Discovery Rule, Plaintiff did not obtain notice of these particular claims until April 2020, *i.e.*, when the defendant agencies served Plaintiff with certain heavily-redacted FOIA/PA records which first apprised him of the subject causes of action.

## MATERIAL FACTS

### Introduction and Background.

7. In the spring of 2018, during his second year of law school, Plaintiff was employed as a law clerk intern in the United States Attorney's Office in Miami, Florida (hereinafter, "Miami USAO" or "DOJ"). Based on his academic background and prior work experience in finance, Plaintiff was placed in the Asset Forfeiture Division of that office.

---

[1] The specific Privacy Act claims asserted in the instant proceeding have not been asserted in the FOIA/PA companion case in the District of Massachusetts, viz. Mullane v. DOJ, et al., 1:19-CV-12379-DJC (D. Mass.), as a direct result of the district court's denial of Plaintiff's motion for leave to file a first amended complaint therein.

8. Unbeknownst to Plaintiff at the time, *Vice.com*, a national publication, had previously published an article entitled "HOW THE FEDS BLEW A CASE AGAINST AN ALLEGED SOUTH AMERICAN DRUG MONEY LAUNDERER[.]"

9. The said *Vice.com* article was extremely critical of the Miami USAO and its employees in connection with a failed criminal prosecution by that particular Office, *viz.* United States v. Martin Lustgarten Acherman, *et al.*, Case No. 15-20840-CR-COOKE/TORRES (S.D. Fla.), and discussed therein certain allegations of misconduct and ethical violations of the Miami USAO.

10. Coincidentally, Plaintiff's father, E. Peter Mullane, Esq. ("Attorney Mullane") had served as lead counsel for the principal defendant in the Lustgarten case, to-wit, Martin Lustgarten Acherman ("Mr. Lustgarten").

11. Mr. Lustgarten had retained Plaintiff's father to represent him and appear on his behalf in the Lustgarten matter and, as correctly noted in the above-referenced *Vice* article, Attorney Mullane was successful in defending him in that proceeding.

12. Plaintiff was personally aware of the Lustgarten case at all times relevant hereto, and had previously assisted defense counsel in that matter by translating non-public documents from the Swiss government from French to English.

13. Unbeknownst to Plaintiff at the time he began his Miami USAO internship, Attorney Mullane had submitted certain filings in the Lustgarten case accusing the Miami USAO and its employees of certain unlawful conduct and unethical behavior.

14. One of the divisions of the Miami USAO that was involved in the Lustgarten case was the Asset Forfeiture Division, *i.e.*, the same division in which Plaintiff was employed.

15. Throughout Plaintiff's USAO employment in 2018, the Miami USAO Asset Forfeiture Division was actively involved in the Lustgarten and PDVSA companion cases. This involvement continued after the criminal phase of the proceeding had ended, and remains ongoing to-date.

### Disclosure of "Abuse" within the Agency.

16. Plaintiff initially enjoyed working in the Asset Forfeiture Division, and was able to greatly contribute with his finance background.

17. However, he questioned the ethical propriety of a decision that his supervisor, former AUSA Alison W. Lehr ("Lehr"), had made by assigning him to cases which were factually related to the Lustgarten case and the alleged Venezuelan PDVSA[2] money laundering scheme.

18. Lehr summarily dismissed Plaintiff's expressed concerns.

19. Shortly thereafter, Plaintiff inexplicably began being verbally abused by Adrienne Rosen of the Miami USAO's Asset Forfeiture Division, a colleague and close friend of former AUSA Lehr.

20. In response, Plaintiff followed USAO protocol and complained to Lehr, his direct supervisor—in writing—about the foregoing verbal abuse.

21. Instead of properly and appropriately referring the matter to the Human Resources department of the USAO (something which Plaintiff reasonably expected her to do), Lehr instead informed him that his written complaint was "inappropriate[.]"

---

[2] See, e.g., U.S. Dept. of Justice, "Former Swiss Bank Executive Sentenced to Prison for Role in Billion-Dollar International Money Laundering Scheme Involving Funds Embezzled from Venezuelan State-Owned Oil Company," Oct. 29, 2018, https://www.justice.gov/opa/pr/former-swiss-bank-executive-sentenced-prison-role-billion-dollar-international-money; U.S. Dept. of Justice, "Two Members of Billion-Dollar Venezuelan Money Laundering Scheme Arrested," Jul. 25, 2018, https://www.justice.gov/opa/pr/two-members-billion-dollar-venezuelan-money-laundering-scheme-arrested.

22. Lehr misrepresented to Plaintiff that defense counsel would discover Plaintiff's written complaint "in discovery in asset forfeiture cases" and that such a document could potentially be used against the Government.

23. Shortly after Plaintiff began questioning his case assignments, the atmosphere of Plaintiff's work environment in the Asset Forfeiture Division, which had hitherto been collegial and respectful, precipitously deteriorated.

24. *Inter alia*, the Miami USAO suddenly demanded that Plaintiff "voluntarily" terminate his internship early.

**Retaliation of the Miami USAO and DOJ in Response to Plaintiff's Complaints.**

25. Shortly thereafter, the Miami USAO suddenly and unexpectedly informed Plaintiff that there was "no more office space" for him, and that he needed to leave the office and terminate his internship immediately.

26. However, the foregoing was directly contradicted by statements made by the Miami USAO's HR department, which had informed Plaintiff just days earlier that he could continue his internship through May 2018.

27. Accordingly, in response, Plaintiff politely informed his Miami USAO supervisor that he did not wish to resign.

28. Shortly after he announced his intention to decline the Miami USAO's request that he "voluntarily" resign, Plaintiff suddenly received an *ex parte* telephone call on his personal cell phone from Venezuelan-born United States District Judge Federico A. Moreno ("Judge Moreno") himself. In addition to being a close friend of former United States Attorney Benjamin G. Greenberg, Judge Moreno's daughter was also employed by the USAO.

29. Coincidentally, Moreno happened to be presiding over a personal civil proceeding relating to Plaintiff's credit score, and to which Plaintiff was a party.

30. **The Miami USAO knew of this personal litigation pending before Moreno because Lehr, Plaintiff's Miami USAO supervisor, was assisting Plaintiff in that matter and providing him legal advice and guidance in that case.**

31. In a highly-unusual recorded voicemail on Plaintiff's cell phone left by Judge Moreno **himself** (*i.e.*, not a clerk) in that *ex parte* telephone call, Judge Moreno ordered Plaintiff to appear before him in federal court the following morning.

32. On the morning of April 10, 2018, Moreno publicly accused Plaintiff of criminal conduct and unethical behavior, made inappropriate comments concerning Plaintiff's father Attorney Mullane, and—without any factual justification—falsely claimed that Plaintiff had corruptly abused his "status" as a USAO intern by allegedly using his employment to request a certified copy of a record from a clerk in a civil action pertaining to his credit score.

33. However, as this Court is well aware, any member of the public can ask for—and successfully obtain—a certified copy of the record in any lawsuit. This is true even if he or she is not even a party to that proceeding. Thus, in reality, there was never any need for Plaintiff to use deception and/or any other unethical behavior to obtain a certified copy of such a public record from a clerk.[3]

---

[3] See, e.g., ABA Code of Judicial Conduct, Rule 2.9(A)(1) ("When circumstances require it, *ex parte* communication for scheduling, *administrative*, or emergency purposes, which does not address substantive matters, is permitted"). Indeed, this includes asking a clerk for a certified copy of the record in an *unsealed* civil case. There is nothing remotely unethical about such a request—something which Moreno, an experienced jurist, was obviously well aware of.

34. In addition to the foregoing, Moreno publicly defamed and criticized Plaintiff's father and questioned his competency as an attorney.

35. *Inter alia*, Moreno criticized Attorney Mullane for having submitted certain unrelated filings in a separate civil case in Massachusetts.

**Adverse Employment Consequences in Furtherance of Defendants' Retaliation.**

36. Plaintiff subsequently learned that Judge Moreno's false accusations of misconduct and unethical behavior against Plaintiff were "coincidentally" similar to the allegations that his father, E. Peter Mullane, Esq., had made against the Miami USAO in the Lustgarten case in court filings.

37. After Judge Moreno publicly made the foregoing inexplicable and highly-improper false accusations against Plaintiff in open court on April 10, 2018, Defendants DOJ and SEC thereupon used those false allegations as an ostensible justification to terminate Plaintiff's Miami USAO and Miami SEC employment agreements.

38. The sole purpose of the April 10, 2018 hearing was to intimidate Plaintiff, to pressure him to resign, and to fraudulently manufacture "good cause" for terminating him from his USAO and SEC employment.

39. Indeed, the Miami USAO had specifically requested Judge Moreno's assistance in helping them to terminate Plaintiff's federal employment through a telephone call from the Miami USAO to the judge—a call which had been initiated by acting United States Attorney Benjamin G. Greenberg personally.

40. Even assuming *arguendo* that Judge Moreno had the right to report "alleged misconduct" to Plaintiff's employer, here, it was the United States Attorney himself who (tellingly) initiated the telephone call to Judge Moreno, not *vice versa*. Tr. 14:7-13 (THE COURT:

"Look at that, the father who's paying for you to go to law school. So that means you know what *ex parte* is though you probably misunderstood in Massachusetts, and here, you're committing it yourself. All right? So I told the United States Attorney. He called me on something else.").

41. Further, the entire April 10, 2018 hearing plainly centered around Plaintiff's ongoing *employment* dispute with the USAO and SEC. Tr. 4:21-25 (THE COURT: "It is your last week. It will be your last week and you'll never be able to work at the U.S. Attorney's Office again[.]").

### Defamatory Disclosures, Misrepresentations, and Information Leaks to National Media Publications and other Third Parties outside of the USAO and DOJ.

42. Shortly after the April 10, 2018 hearing, Plaintiff's supervisor, former USAO employee Alison W. Lehr, deceptively offered to provide Plaintiff additional legal advice on how best to handle the situation in response to Judge Moreno's false and defamatory allegations.[4]

43. At this particular point in time, Plaintiff was wholly unaware of Lehr's involvement, and had no reason whatsoever to doubt her motives in purportedly seeking to provide him legal advice in "good faith."

44. Amongst other things, Lehr deceptively advised Plaintiff to order a copy of the April 10, 2018 hearing transcript—purportedly in order to help him, and to provide him the appropriate legal advice.

---

[4] After litigation relating to this serious matter was initiated in parallel cases, Miami USAO employee Lehr—a licensed attorney and AUSA who has since been terminated from her USAO employment—assaulted and unlawfully detained Plaintiff's process server. A criminal complaint was subsequently filed against Lehr in the State of Florida by the process server.

45. Complying with, and reasonably relying upon, Lehr's instructions, Plaintiff proceeded to order and pay for an electronic PDF copy of the April 10, 2018 hearing transcript—all at Lehr's behest.

46. Per Lehr's request, once Plaintiff finally received a copy of that transcript—which, by this point in time, was several *weeks* after the April 10, 2018 hearing—Plaintiff thereupon immediately emailed Lehr a copy of the transcript.

47. Plaintiff did so wholly unaware of Lehr's true, underlying intention of retaliating against and maliciously harming Plaintiff.

48. "Coincidentally," several days after Plaintiff provided Lehr the copy of the transcript which she had requested, an article appeared in *Above the Law*, a national online tabloid. That article, published on **April 30, 2018** (*i.e.*, exactly 20 days after the April 10, 2018 Moreno hearing, and only several days after Plaintiff emailed the transcript to Lehr) was entitled "JUDGE DETONATES PRO SE LAW STUDENT SO HARD I NOW MUST DEFEND A DUMB KID[.]"

49. The *Above the Law* article contained the electronic PDF copy of the April 10, 2018 hearing transcript itself as a hyperlink next to the article on the tabloid's website.

50. Indeed, this was the exact same hearing transcript that Plaintiff had emailed to Lehr at her USAO email address (Alison.Lehr@usdoj.gov) just days earlier.

51. Plaintiff found this temporal "coincidence" and timing hard to believe, particularly given that the transcript was not publicly available on PACER as of April 30, 2018 (*i.e.*, the date on which the article was published). Additionally, as of that date, no one else had ordered a copy of the hearing transcript from the court reporter, and there was no other logical explanation for the related events and unlawful disclosures.

52. As of that date of publication of the subject *Above the Law* article, only Lehr had had a copy of that particular transcript, and only Lehr could have transmitted the document to the media (and other third parties) as a practical matter.

53. Plaintiff later learned that Lehr never intended to use the copy of the April 10, 2018 hearing transcript to help him. To the contrary, Lehr sought to embarrass and humiliate Plaintiff in the press in furtherance of the Miami USAO's ongoing efforts to retaliate against him.

54. Instead of using the April 10, 2018 hearing transcript to provide him legal advice—as Lehr falsely told him she intended to do—Lehr, with the assistance of her USAO colleagues, used it for other purposes. Indeed, Lehr and her Miami USAO colleagues maliciously forwarded the electronic PDF file containing the transcript to: (i) Elie Mystal, the former chief editor of the *Above the Law* tabloid in New York City, New York; (ii) the *Law360* national legal publication; (iii) numerous individuals within the USAO; (iv) SEC employees such as Lisa T. Roberts; (v) the University of Miami School of Law; (vi) the Massachusetts Board of Bar Examiners; and (vii) the Florida Board of Bar Examiners.

55. In order to avoid discovery of their retaliatory actions through FOIA and/or PA requests, Miami USAO employees, including Lehr, forwarded their work emails to their personal email addresses. These work emails include, without limitation, an email with a PDF attachment containing the subject April 10, 2018 hearing transcript.

56. Once the April 10, 2018 hearing transcript was safely in Miami USAO employee Lehr's personal email account, she thereupon transmitted it via email correspondence to third parties outside of the agency, as previously noted, together with other personal information regarding Plaintiff and his employment within the agency.

57. This information included, without limitation, personal information from Plaintiff's PA-protected personnel file and USAO timesheet.

58. By way of example only, after Plaintiff emailed the April 10, 2018 hearing transcript to Lehr's professional email address (*i.e.*, a confidential message which was made for the sole purpose of obtaining legal advice from Lehr, a licensed Florida attorney), not only did Lehr unethically betray Plaintiff's confidence and fail to respect the presumptive confidentiality of those communications, she thereupon proceeded to forward the April 10, 2018 hearing transcript to federal prosecutors within the Miami USAO.

59. Indeed, in one of her email messages, Lehr forwarded the subject transcript—a document which she knew to contain defamatory and factually-false allegations—to two (2) separate federal prosecutors and unambiguously requested that they take all "appropriate action" against Plaintiff.

60. Another Miami USAO employee also transmitted Plaintiff's PA-protected personnel records to the Executive Office of United States Attorneys ("EOUSA") in Washington, DC, together with the defamatory news articles pertaining to Plaintiff and a copy of the April 10, 2018 hearing transcript.

61. These actions were all undertaken and performed solely with a view to further retaliate against, discredit, intimidate, humiliate, and further impugn Plaintiff's reputation and character, and to prevent him from ever becoming a member of the legal profession.

62. After the Miami USAO successfully caused multiple defamatory news articles to be published vis-à-vis Plaintiff, the Miami USAO employees thereupon "republished" those same articles and transmitted them to numerous intra-agency colleagues within the DOJ.[5]

---

[5] Even publicly-available information, such as newspaper clippings, articles, unsealed court documents, hearing transcripts, or press releases can constitute a Privacy Act-protected "record." See Clarkson v. IRS, 678 F.2d 1368,

63. The said defamatory articles, the April 10, 2018 hearing transcript, and Plaintiff's Privacy Act-protected employment records were additionally "republished" and transmitted to third parties *outside* the USAO and outside the DOJ. These include, without limitation: (i) Elie Mystal, the former chief editor of the *Above the Law* tabloid in New York City, New York; (ii) the *Law360* national legal publication; (iii) numerous individuals within the USAO; (iv) SEC employees such as Lisa T. Roberts; (v) the University of Miami School of Law; (vi) the Massachusetts Bar; and (vii) the Florida Bar.

### Defendants' Defamatory Statements, Defamatory Performance Evaluations, and Unauthorized Disclosures to the University of Miami School of Law.

64. Furthermore, the Miami USAO transmitted a defamatory and factually-erroneous performance evaluation to the University of Miami School of Law.

65. Amongst other things, the Miami USAO falsely represented therein that Plaintiff's legal writing and research abilities were not "up to par"—notwithstanding the fact that both the USAO and SEC had reviewed and approved legal writing samples provided by Plaintiff, and both independently decided to offer Plaintiff employment based upon his legal writing and research abilities.

66. Quite tellingly, and further evidencing its *mala fide* motives, the Miami USAO's defamatory performance report of Plaintiff's allegedly "subpar" legal writing skills plainly had no nexus or connection with any *bona fide* concerns of "intern misconduct"—nor were

---

1372-73 (11th Cir. 1982) (permitting subsection (e)(7) First Amendment challenge to agency's maintenance of newsletters and press releases); Krieger v. DOJ, 529 F. Supp. 2d 29, 51 (D.D.C. 2008) (permitting subsection (e)(7) challenge to agency's maintenance of copies of plaintiff's speech announcements and publicly filed court complaint); see also OMB Supplementary Guidance, 40 Fed. Reg. at 56,742, https://www.justice.gov/paoverview_omb-75-supp ("Collections of newspaper clippings or other published matter about an individual maintained other than in a conventional reference library would normally be a system of records."); cf. Gerlich v. DOJ, 659 F. Supp. 2d 1, 12-16 (D.D.C. 2009) (concluding without discussing that "printouts" of "[i]nternet searches regarding [job] candidates' political and ideological affiliations" constituted "records"), aff'd in part, rev'd in part & remanded, on other grounds, 711 F.3d 161 (D.C. Cir. 2013). In the case at bar, this "publicly-available information" includes both the defamatory news articles regarding Plaintiff and the hearing transcript itself.

those defamatory statements even tangentially related to Moreno's fabricated and illogical claim of a supposedly unethical *ex parte* request for a certified copy of the record from his clerk.

### Retaliation through Defendants' Joint Efforts to Sever Plaintiff's Entirely-Separate and Unrelated SEC Employment Agreements.

67. With a view to further retaliate against Plaintiff, the Miami USAO unlawfully secreted, transmitted, and disseminated PA-protected personnel records to third-party federal employees outside of the DOJ such as Miami SEC employee Lisa T. Roberts.[6]

68. These federal employees included, without limitation: (i) Federico A. Moreno of the United States District Court of the Southern District of Florida; and (ii) Lisa T. Roberts of the Miami, Florida office of the SEC.

69. All of the personal information transmitted by the Miami USAO directly pertained to Plaintiff himself, and included *inter alia*: (i) Plaintiff's DOJ personnel file and timesheet; (ii) the April 10, 2018 hearing transcript, which Plaintiff had only provided to Lehr in confidence and in an attorney-client context; the (iii) the subject defamatory news articles, with the Miami USAO ironically being the actual source of those particular articles.

### Retaliation through Defendant DOJ and SEC's Deliberate Failure to Provide Plaintiff a "Name-Clearing" Hearing, in Violation of Federal Law; Defendants' Deliberate Deprivation of Plaintiff's Constitutional Right to Due Process.

70. For the sole purpose of further retaliating against Plaintiff, both the SEC and USAO unlawfully deprived Plaintiff of a "name clearing" hearing vis-à-vis their unilateral termination of his federal employment.

---

[6] The transmission and sharing of such personal information between federal agencies is actionable under the Privacy Act of 1974—even in instances where the transmissions are done in good faith. See, e.g., FAA v. Cooper, 566 U.S. 284 (2012) (U.S. Social Security Administration's disclosure and sharing of personal information to the U.S. Dept. of Transportation was actionable under the Privacy Act of 1974).

71. Even worse, after Plaintiff reasonably requested to meet with Greenberg to discuss the retaliation against him by the Miami USAO, Greenberg failed to even respond.

72. Furthermore—and quite tellingly—Defendant SEC employee Roberts also refused to discuss the matter with Plaintiff.

73. The foregoing is not an exhaustive list of the numerous adverse and retaliatory actions taken by Defendants DOJ and SEC.

74. In furtherance of the subject retaliation, the Miami SEC even took the extraordinary step of asking the SEC's Human Resources division in Washington, DC, to author and transmit a fraudulent letter to Plaintiff.

75. Therein, the SEC falsely and deceitfully claimed that it needed to rescind Plaintiff's SEC employment because Plaintiff had supposedly failed the SEC's background check.

76. However, according to subsequently-obtained public records, Plaintiff *had*, in fact, successfully passed the SEC's employee background check.

77. What is more, the Miami SEC had specifically promised Plaintiff **full-time, remunerated employment** in Washington, DC, within the agency if Plaintiff were to agree to first work as an unpaid summer intern—an offer which Plaintiff gladly accepted.

78. At all times relevant hereto, Plaintiff reasonably and detrimentally relied upon that promise of full-time, remunerated employment, and had given up numerous lucrative employment opportunities in the private sector.

79. But for Defendants' promise of full-time, remunerated employment, Plaintiff would not have agreed to first work as an unpaid intern for either agency.

80. Yet, two (2) weeks before the said internship was due to begin, the SEC suddenly informed Plaintiff that he could no longer work there, and refused to even meet with Plaintiff or to give him any opportunity to clear his name.[7]

### Retaliation through Defendant DOJ and SEC's Dissemination and Transmission of False Allegations of Criminal Conduct to the Massachusetts and Florida Bar.

81. Additionally, the Miami USAO and its agents *further* retaliated against Plaintiff by making false allegations of criminal conduct to both the Massachusetts Board of Bar Examiners and the Florida Board of Bar Examiners.

82. As a foreseeable result of the foregoing retaliatory conduct, Plaintiff was subsequently denied admittance to the bar in both of those states.

83. These denials were made notwithstanding the fact that Plaintiff: (i) has never been convicted of any crime whatsoever; (ii) has never been sanctioned by any court; (iii) has never been afforded any "due-process" hearing *at all* in connection with this matter; and (iv) has successfully passed background checks for the USAO, DOJ, FINRA, the Commonwealth of Massachusetts, and countless other entities.

84. As a foreseeable consequence of Defendants' ongoing retaliation, Plaintiff has been unemployed for the past two (2) years—and unfortunately remains unemployed to-date.

85. As a foreseeable consequence of Defendants' ongoing retaliation, Plaintiff has been denied full-time, remunerated employment within the federal government and within the legal profession.

---

[7] Under federal common law, even in cases where the plaintiff does *not* have any contractual "property interest" in gainful government employment, a Codd or "name clearing" hearing is nevertheless required pursuant to the Due Process Clause of U.S. Const., Amend. V. Johnston v. Borders, 724 Fed. App'x 762 (11th Cir. Feb. 9, 2018); Doe v. U.S. Dep't of Justice, 753 F.2d 1092 (D.C. Cir. 1985).

86. The Miami USAO additionally repeated, "re-published," and circulated the false allegations against Plaintiff to the Executive Office of United States Attorneys ("EOUSA") in Washington, DC, and to EOUSA's General Counsel's Office.

87. In addition, Miami USAO and Miami SEC employees such as Lehr circulated, transmitted, and "re-published" defamatory information such as the April 10, 2018 hearing transcript and certain defamatory news articles (for which those employees were, ironically, the source) around and within their respective offices and agencies.

88. The foregoing was also done by Miami SEC employee Roberts, who circulated, transmitted, and "re-published" all of those records and information to numerous SEC employees in Miami, Florida, and in Washington, D.C.

89. Moreover, Roberts also knowingly retaliated against Plaintiff by falsely restating and "re-publishing" the fabricated allegations of criminal conduct during a telephone call with the University of Miami School of Law.

**COUNT I**
**Violations of the Privacy Act of 1974, 5 U.S.C. § 552a**
**Unauthorized Disclosure, Dissemination, and Transmission of Privacy Act-Protected Information and Records to, *inter alia*: Federico A. Moreno; Lisa T. Roberts; SEC employees; *Above the Law*; *Law360*; University of Miami; Massachusetts Board of Bar Examiners; Florida Board of Bar Examiners; and USAO/DOJ Employees**
**(Defendants DOJ and SEC)**

90. As further explained hereinabove, the USAO and its agents unlawfully transmitted PA-protected personal information regarding Plaintiff to numerous third parties outside of the DOJ. These third parties include, without limitation: Federico A. Moreno of the United States District Court for the Southern District of Florida; Lisa T. Roberts of the SEC; national media publications, including without limitation *Above the Law* and *Law360*; the

University of Miami School of Law; the Massachusetts Board of Bar Examiners; and the Florida Board of Bar Examiners.

91. The USAO's transmission of Plaintiff's USAO personnel file and timesheet to the said third parties was performed: (i) without Plaintiff's written consent; and (ii) without a warrant.

92. The transmission of such PA-protected information violated both the PA and Plaintiff's constitutional right to due process and a "name clearing" hearing under U.S. Const., Amend. V.

93. The transmission and sharing of such personal information between federal agencies (*e.g.*, the DOJ and the federal judiciary) is actionable under the Privacy Act. See, e.g., FAA v. Cooper, 566 U.S. 284 (2012) (U.S. Social Security Administration's disclosure of personal information to the U.S. Dept. of Transportation was actionable under the PA).

94. In addition, numerous USAO and SEC employees circulated defamatory information such as the April 10, 2018 hearing transcript and certain defamatory news articles (for which those employees were the sole source) around and within their respective agencies, and amongst USAO and SEC personnel.

95. As a matter of law, all of the subject agency information and records constituted protected agency records within the meaning of the PA.

96. The civil remedies provision of the PA provides that, for any "intentional or willful" refusal or failure to comply with the Act, the defendant agency shall be liable for "actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000." 5 U.S.C. § 552a(g)(4)(A).

## REQUEST FOR BENCH TRIAL

Plaintiff hereby requests a bench trial in the instant cause.

## PRAYER FOR RELIEF

**WHEREFORE,** premises considered, Plaintiff prays that this Honorable Court:

(i) Enter judgment in favor of Plaintiff and against Defendants on all counts of the complaint;

(ii) Enter a declaratory judgment against Defendants for the Privacy Act violations;

(iii) Issue a mandatory injunction and order permanently barring and enjoining Defendants from engaging in such unlawful conduct;

(iv) Award Plaintiff all available monetary damages pursuant to the PA, together with pre- and post-judgment interests thereon;

(v) Award Plaintiff reasonable costs and attorneys' fees, should any such expenses be incurred in this matter;

(vi) Expedite the instant cause pursuant to 28 U.S.C. § 1657(a); and

(vii) Grant such other relief as the Court may deem just and proper.

At Cambridge, Massachusetts,
This 10th Day of August, 2021

Respectfully submitted,

/s/ Jonathan Mullane
JONATHAN MULLANE
30 Donnell Street
Cambridge, MA 02138
Tel.: (617) 800-6925
j.mullane@icloud.com

## VERIFICATION

COMMONWEALTH OF MASSACHUSETTS,   )
COUNTY OF MIDDLESEX.             )  ss.

    I, JONATHAN MULLANE, under oath, hereby state that I have reviewed the within filing, and, based upon my own personal knowledge, hereby verify and affirm that the allegations contained therein are true and accurate, and hereby certify that no material facts have been omitted therefrom.

    SUBSCRIBED AND SWORN TO under the pains and penalties of perjury under the laws of the United States of America this 10th Day of August, 2021.

/s/ Jonathan Mullane
JONATHAN MULLANE