# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

JONATHAN MULLANE,

             Plaintiff,

      v.

UNITED STATES DEPARTMENT
OF JUSTICE, <u>et al.</u>,

         Defendants.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td><td>

Civil Action No. 22-725 (RBW)

</td></tr>
</table>

## <u>MEMORANDUM OPINION</u>

The plaintiff, Jonathan Mullane, proceeding <u>pro se</u>, brings this civil action against the defendants, the United States Department of Justice ("DOJ") and the United States Securities and Exchange Commission ("SEC"), based on alleged violations of the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act" or "Act"). <u>See</u> Verified Complaint ("Compl.") ¶¶ 54, 90, ECF No. 1. Specifically, the plaintiff alleges, among other things, that the defendant agencies' employees wrongfully disclosed the plaintiff's personal information in violation of the Privacy Act. <u>See generally</u> <u>id.</u> Currently pending before the Court is the defendants' motion to dismiss the plaintiff's Privacy Act claims. <u>See</u> Defendants' Motion to Dismiss ("Defs.' Mot.") at 1, ECF No. 43. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant the defendants' motion to dismiss.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Memorandum of Law in Support of Defendants' Motion to Dismiss ("Defs.' Mem."), ECF No. 43-1; (2) the Plaintiff's Verified Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 46; and (3) the Reply in Further Support of Defendants' Motion to Dismiss ("Defs.' Reply"), ECF No. 47.

# I.   BACKGROUND

## A.   Factual Background

The following facts are derived from the plaintiff's Complaint unless otherwise specified. In the spring of 2018, the plaintiff was a second year law school student and "was employed as a law clerk intern in the United States Attorney's Office in Miami, Florida [(]'Miami USAO' or 'DOJ') . . . [and b]ased on his academic background and prior work experience in finance, [the p]laintiff was placed in the Asset Forfeiture Division of that office."  Compl. ¶ 7.  "Unbeknownst to [the p]laintiff . . . [and before he began his internship,] Vice.com, a national publication, had previously published an article[,]" id. ¶ 8, that was "extremely critical of the Miami USAO and its employees in connection with a failed criminal prosecution [of a money laundering case] by that prosecutor office . . . and discussed . . . certain allegations of misconduct and ethical violations of the Miami USAO[,]" id. ¶ 9.  The plaintiff's "father, E. Peter Mullane . . . [,] had served as lead counsel [in the successful defense of] the principal defendant in [the just referenced criminal money laundering] case[,]" id. ¶¶ 10–11, which included the involvement of that office's "Asset Forfeiture Division, i.e., the same division in which [the p]laintiff was employed[,]" id. ¶ 14.  Also, "unbeknownst to [the p]laintiff at the time he began his Miami USAO internship, [his father] had submitted certain filings in the [criminal money laundering] case accusing the Miami USAO and its employees of certain unlawful conduct and unethical behavior."  Id. ¶ 13.

Upon starting his internship with the Miami USAO, and apparently becoming aware soon thereafter of the money laundering case in which his father was involved, "[the plaintiff] questioned the ethical propriety of [the] decision that his supervisor, former AUSA Alison W. Lehr ('Lehr'), had made by assigning him to cases which were[, in his view,] factually related to

the [aforementioned criminal money laundering case.]"  Id. ¶ 17.  However, the plaintiff alleges

that "Lehr summarily dismissed [his] expressed concerns."  Id. ¶ 18.  Soon thereafter, the

plaintiff alleges that "[he] inexplicably began being verbally abused by Adrienne Rosen of the

Miami USAO's Asset Forfeiture Division, a colleague and close friend of former AUSA Lehr."

Id. ¶ 19.  "In response, [the p]laintiff followed USAO protocol and complained to Lehr, his direct

supervisor—in writing—about the foregoing verbal abuse."  Id. ¶ 20.  "Instead of properly and

appropriately referring the matter to the Human Resources [D]epartment of the USAO . . . , Lehr

instead informed [the plaintiff] that his written complaint was 'inappropriate[.]"  Id. ¶ 21.  The

plaintiff alleges that "Lehr misrepresented to [the p]laintiff that defense counsel would discover

[his] written complaint 'in discovery in asset forfeiture cases' and that such a document could

potentially be used against the [g]overnment."  Id. ¶ 22.  "Shortly after [the p]laintiff began

questioning his case assignments, the atmosphere of [the p]laintiff's work environment . . . ,

which had [previously] been collegial and respectful, precipitously deteriorated[,]" id. ¶ 23,[2] and

thereafter, the Miami USAO requested that the "[p]laintiff 'voluntarily' terminate his internship

early[,]" id. ¶ 24.  The request for the plaintiff's resignation "directly contradicted statements

made by the Miami USAO's [Human Resources] [('HR')] department [informing] [the

p]laintiff . . . that he could continue his internship through May 2018."  Id. ¶ 26.  "Accordingly,

in response, [the p]laintiff informed his Miami USAO supervisor that he did not wish to resign."

Id. ¶ 27.

    "Shortly after [the plaintiff] announced his intention to decline the . . . request that he

'voluntarily resign,' [the p]laintiff [allegedly] received an ex parte telephone call on his personal

cell phone from . . . United States District Judge Federico A. Moreno ('Judge Moreno')[,]" id.

_____

[2] The plaintiff represents that he "initially enjoyed working in the Asset Forfeiture Division[.]"  Id. ¶ 16.

¶ 28, "order[ing] [the p]laintiff to appear before him in federal court the following morning[,] <u>id.</u> ¶ 31.  Complying with that order, "[o]n the morning of April 10, 2018," <u>id.</u> ¶ 32, the plaintiff appeared before Judge Moreno, "who happened to be presiding over a personal civil proceeding relating to [the p]laintiff's credit score, and to which [the p]laintiff was a party," <u>id.</u> ¶¶ 29, "publicly accused [the p]laintiff of criminal conduct and unethical behavior, . . . [by having] corruptly abused his 'status' as a USAO intern by [ ] using his employment to request a certified copy of a record from a clerk in [the] civil action pertaining to his credit score[,]" <u>id.</u> ¶ 32. Among other things, Judge Moreno "in open court on April 10, 2018," <u>id.</u> ¶ 37, allegedly "defamed and criticized [the p]laintiff's father[,]" <u>id.</u> ¶ 34, and told the plaintiff directly: "I told the United States Attorney[ about your alleged misconduct, who had] called [Judge Moreno] on something else[,]" <u>id.</u> ¶ 40 (emphasis omitted).  Judge Moreno also allegedly told "[the plaintiff that he will] never be able to work at the U.S. Attorney's Office again[.]"  <u>Id.</u> ¶ 41.  According to the plaintiff, "[his] supervisor, . . . Lehr, deceptively offered to provide [him] additional legal advice on how best to handle the situation in response to Judge Moreno's . . . allegations[,]" <u>id.</u> ¶ 42, and "advised [the p]laintiff to order a copy of the April 10, 2018 hearing transcript[,]" <u>id.</u> ¶ 44, which he paid for and obtained, <u>see id.</u> ¶ 45.

"[O]nce [the p]laintiff received a copy of [the] transcript . . . [, he] immediately emailed Lehr a copy of the transcript."  <u>Id.</u> ¶ 46.  "[S]everal days after [the p]laintiff provided Lehr the copy of the transcript[,] which she had requested, an article appeared in . . . a national online tabloid[,] . . . entitled 'Judge Detonates Pro Se Law Student So Hard I Now Must Defend a Dumb Kid'[.]"  <u>Id.</u> ¶ 48.  The "article contained the electronic PDF copy of the April 10, 2018 hearing transcript, <u>id.</u> ¶ 49, and the plaintiff contends that "[a]s of [the] date of publication of the

. . . article, only Lehr had [ ] a copy of [the] transcript, and only Lehr could have transmitted the document to the media (and other third parties)[,]" id. ¶ 52.

The plaintiff further contends that "Lehr and her Miami USAO colleagues [ ] forwarded the electronic PDF file containing the transcript to: (i) Elie Mystal, [at that time and now] former chief editor of the Above the Law tabloid in New York City, New York; (ii) the Law360 national legal publication; (iii) numerous individuals within the USAO; (iv) SEC employees such as Lisa T. Roberts; (v) the University of Miami School of Law; (vi) the Massachusetts Board of Bar Examiners; and (vii) the Florida Board of Bar Examiners." Id. ¶ 54.  In total, "the personal information [allegedly] transmitted by the Miami USAO [included]: (i) [the p]laintiff's DOJ personnel file and timesheet; (ii) the April 10, 2018 hearing transcript . . . ; [and] (iii) the subject [ ] news articles[.]"[3] Id. ¶ 69.

According to the plaintiff, "[a]fter Judge Moreno publicly made the foregoing . . . accusations against [him] in open court on April 10, 2018, [the] DOJ and SEC used those [ ] allegations as [ ] justification to terminate [the p]laintiff's Miami USAO and Miami SEC employment agreements." Id. ¶ 37.  The plaintiff contends that earlier, "[t]he Miami SEC had [ ] promised [him] full-time, remunerated employment in Washington, DC, within the agency if [he] were to agree to first work as an unpaid summer intern[.]" Id. ¶ 77 (emphasis omitted). However, following the April 10, 2018 hearing, the SEC "claimed that it needed to rescind [the pl]aintiff's SEC employment because [he] had [ ] failed the SEC's employee background check[,]" id. ¶ 75, which earlier he "had, in fact, successfully passed[,]" id. ¶ 76.  The plaintiff

---

[3] In a related case filed in the United States District Court for the Southern District of Florida, the plaintiff alleged that Judge Moreno and employees of the DOJ and SEC engaged in, inter alia, racketeering, conspiracy, slander, and tortious interference.  See generally Verified Complaint, Mullane v. Moreno et al., No. 1:20-CV-21339-AKK, (S.D. Fla. Mar. 27, 2020), ECF No. 1.  The plaintiff voluntarily dismissed his complaint but subsequently moved for the trial court to reconsider his dismissal.  After the trial court denied the plaintiff's motion for reconsideration, the plaintiff then appealed to the Circuit Court, and the case is currently being held in abeyance pending the issuance of a mandate in another case.  See Order at 2, Mullane v. Moreno et al., No. 21-13468 (11th Cir. 2023), ECF No. 42-2.

alleges that he "reasonably and detrimentally relied upon that promise of full-time, remunerated employment, and had given up numerous lucrative employment opportunities in the private sector." Id. ¶ 78.  The plaintiff further contends that he was also "denied admittance to the bar in both [Massachusetts and Florida,]" id. ¶ 82, and "[a]s a foreseeable consequence of [the d]efendants' [actions], [he] has been unemployed for the past two (2) years—and [ ] remain[ed] unemployed [as of the date of the filing of his Complaint,]" id. ¶ 84.

## B. Procedural Background

On August 11, 2021, the plaintiff filed his Complaint,[4] alleging that the transmission of his personnel file, timesheet, and hearing transcript by the USAO and its agents was in violation of the Privacy Act of 1974, 5 U.S.C. § 552(a).  See Compl. ¶¶ 59–60, 63, 90–93.  On May 20, 2022, the defendants filed their motion to dismiss the plaintiff's Privacy Act claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Defs.' Mot. at 1.  The plaintiff then filed his opposition on June 13, 2022, see Pl.'s Opp'n at 1, and the defendants filed their reply on June 27, 2022, see Defs.' Reply at 1.

## II.   STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests whether a complaint has properly "state[d] a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable

---

[4] The case was filed in this Court, but the Court transferred the case to the Southern District of Florida.  See Order at 1 (Feb. 3, 2022), ECF No. 15.  However, after all of the judges on the Southern District recused themselves from presiding over the case, it was transferred back to this Court.  See Order at 6 (Mar. 14, 2022), ECF No. 37.

inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "[t]he complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged." <u>Schuler v. United States</u>, 617 F.2d 605, 608 (D.C. Cir. 1979) (quoting <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969)).  While "a court must accept as true all of the allegations contained in a complaint[,] . . . [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 555).  "Factual allegations, although assumed to be true, must still 'be enough to raise a right to relief above the speculative level[,]'" <u>Hettinga v. United States</u>, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting <u>Twombly</u>, 550 U.S. at 555), and "the Court need not accept inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[,]" <u>id.</u> (citing <u>Kowal v. MCI Commc'n Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." <u>Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997).

Applying the above standard of review, the Court must be mindful "where, as here, an action is brought by a <u>pro se</u> plaintiff[.]" <u>Wada v. U.S. Secret Serv.</u>, 525 F. Supp. 2d 1, 8–9 (D.D.C. 2007).  "[T]he pleadings of <u>pro se</u> parties are 'to be liberally construed, and a <u>pro se</u> complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Khatri v. Bd. of Trs.</u>, No. 19-cv-2644, 2021 WL 2403087, at *4 (D.D.C. June 11, 2021) (quoting <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007)).  The Court may

also "consider supplemental material filed by a pro se litigant in order to clarify the precise

claims being urged[,]" Greenhill v. Spellings, 482 F.3d 569, 572 (D.C. Cir. 2007), and all filings

by [the] plaintiff[] should be read together in assessing whether [the] complaint[] should be

dismissed[,]" Heard v. U.S. Dep't of State, No. 08-cv-02123, 2010 WL 3700184, at *7 (D.D.C.

Sept. 17, 2010) (citing Richardson v. United States, 193 F.3d 545, 548 (D.C. Cir. 1999)).

"Nonetheless, a 'pro se complaint, like any other, must present a claim upon which relief can be

granted by the [C]ourt.'"  Khatri, 2021 WL 2403087, at *4 (quoting Crisafi v. Holland, 655 F.2d

1305, 1308 (D.C. Cir. 1981)).

### III.    ANALYSIS

The defendants argue that (1) the "[p]laintiff alleges no facts indicating that the records at

issue were contained in a Privacy Act 'system of records[,]'" Defs' Mem. at 11; (2) the

"[p]laintiff has not alleged that the disclosed information was 'retrieved' from a Privacy Act

'system of records[,]'" id. at 14; and (3) the "[p]laintiff alleges no facts to support the conclusion

that he plausibly suffered actual damages as a result of the alleged unlawful disclosures[,]" id.

at 17.  In response, the plaintiff asserts that (1) he "is not required to plead, at the pre-discovery

Rule 12 stage, the names of specific 'systems of records' from which the leaked information was

originally retrieved by the agency employees[,]" Pl.'s Opp'n at 8; (2) "this action is exempt from

the so-called 'retrieval' requirement[,]" id. at 19, which "does not apply in cases where the

agency employees disclosing the records also played a role in creating those same records[,]" id.;

and (3) the Complaint "unambiguously states that [the p]laintiff . . . incurred significant

pecuniary harm from his ongoing unemployment[,]" id. at 25 n.15.  For the reasons stated below, the Court concludes that it must grant the defendants' motion to dismiss.[5]

## A.   The Privacy Act

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use[,] and dissemination of personal information contained in agency records." Bartel v. FAA, 725 F.2d 1403, 1407 (D.C. Cir. 1984).  The Act provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains[.]"  5 U.S.C. § 552a(b) (emphasis added).  The Act defines a "record" as

> any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

Id. § 552a(a)(4).  The Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." Id. § 552a(a)(5).  The fact that records are capable of being retrieved by name or other personal identifiers is not alone sufficient to transform a group of records into a "system of records"; rather, there must be evidence that "an agency in practice retrieves information about individuals

---

[5] The plaintiff lodges several other arguments in opposition to the defendants' motion to dismiss, e.g., judicial estoppel, see Pl.'s Opp'n at 3, and spoilation of material evidence, see id. at 14.  However, because the Court concludes that the plaintiff has not adequately alleged that the documents at issue were maintained within a system of records, nor does he make the necessary connection between the harm he has allegedly suffered to the alleged disclosures, the Court need not reach these arguments to resolve the defendants' motion to dismiss.

by reference to their names or other identifiers." Henke v. U.S. Dep't of Com., 83 F.3d 1453, 1461 (D.C. Cir. 1996) (emphasis added).

The Privacy Act allows for the filing of a civil action against an agency for its failure to comply with any of the Act's provisions when the agency's failure has an "adverse effect on an individual." 5 U.S.C. § 552a(g)(1)(D); see Doe v. Chao, 540 U.S. 614, 618-19 (2004) (describing the Act's "catchall" remedy for any violation having an adverse effect). The Act provides for suits brought under subsection 552a(g)(1)(D) if the court determines that the agency acted in a manner which was intentional or willful. See 5 U.S.C. § 552a(g)(4). In such circumstances, the United States shall be liable to the individual in an amount equal to the sum of the—

  (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and

  (B) the costs of the action together with reasonable attorney fees as determined by the court.

Id. (emphasis added). The Supreme Court has clarified that the statutory damage award of $1000 is available only to plaintiffs who can establish actual damages. See Doe v. Chao, 540 U.S. at 627.

A plaintiff pursuing a claim for improper disclosure "must show that (1) the disclosed information is a record within a system of records; (2) the agency improperly disclosed the information; (3) the disclosure was willful or intentional; and (4) the disclosure adversely affected the plaintiff[.]" Runkle v. Gonzales, 391 F. Supp. 2d 210, 238 (D.D.C. 2005) (internal quotation marks omitted) (citing Logan v. Dep't of Veterans Affs., 357 F. Supp. 2d 149, 154 (D.D.C. 2004)). If a plaintiff meets these prerequisites, he "may recover monetary damages, costs and fees if [he] [ ] can further establish that [he or] she sustained actual damages as a result

10

of some harm caused by the agency's disclosure." Doe v. U.S. Dep't of Treasury, 706 F. Supp.

2d. 1, 6 (D.D.C. 2009).

**B.     Whether the Plaintiff has Adequately Pleaded that the Documents at Issue were 'Records' Maintained within a 'System of Records'**

The defendants first argue that the plaintiff's Complaint "alleges no facts indicating that

the records at issue were contained in a Privacy Act 'system of records.'" Defs.' Mem. at 11.

Specifically, the defendants contend that the "[p]laintiff does not allege that the United States

Attorney's Office for the Southern District of Florida maintained any 'group of records' in which

the subject documents can be retrie[v]ed by an individual's name, identifying number, symbol,

or other identifier unique to an individual."[6] Id. at 12. In response, the plaintiff asserts that the

defendants' motion is "premature" because a "plaintiff is not required to identify [ ]or plead at

the Rule 12 stage the particular records which were improperly disclosed" and "need only

plausibly allege that certain records concerning [the plaintiff [ ]] were wrongfully disclosed by

the [g]overnment[,]" Pl.'s Opp'n at 8–9 (emphasis and internal quotation marks omitted).

With limited exception, "[t]he Privacy Act generally prohibits government agencies from

disclosing [protected records] without the consent of the individual." Reed v. Dep't of the Navy,

910 F. Supp. 2d 32, 41 (D.D.C. 2012) (quoting Bigelow v. Dep't of Def., 217 F.3d 875, 876

(D.C. Cir. 2000) (internal quotation marks omitted)). However, "[n]ot every nonconsensual

---

[6] The defendants also argue that "[u]nder DOJ regulations, the agency's email systems, which include those used by AUSAs and other employees (and interns), do not constitute a 'system of records' because they are not indexed by [a] personal identifier[,]" Defs.' Mem. at 13, and ask that the Court treat the argument as "conceded" because "[the p]laintiff did not address [the d]efendants' argument" in his opposition, Defs.' Reply at 10 n.3; see generally Pl.'s Opp'n. However, as the plaintiff does not allege that "the subject 'records' were the emails themselves[,]" Pl.'s Opp'n at 11 (emphasis omitted), the Court need not reach the issue of whether the emails themselves, rather than the documents described above, i.e., the hearing transcript and news articles, between the plaintiff and Lehr were contained within a system of records, as the Court considers the argument essentially conceded, c.f. Stubbs v. Law Off. of Hunter C. Piel, LLC, 148 F. Supp. 3d 2, 4 (D.D.C. 2015) ("It is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and address only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quoting Buggs v. Powell, 293 F. Supp. 2d 135, 141 (D.D.C. 2003))).

disclosure of information contained in Privacy Act-protected records constitutes a violation of the Privacy Act." U.S. Dep't of Treasury, 706 F. Supp. 2d at 6.  In general, "the Privacy Act only covers disclosures of information which was either directly or indirectly retrieved from a system of records[,]" Fisher v. Nat'l Insts. of Health, 934 F. Supp. 464, 473 (D.D.C. 1996), and "[d]etermining that a system of records exists from which the document at issue was retrieved is a prerequisite to a substantive Privacy Act claim[,]" Chang v. Dep't of Navy, 314 F. Supp. 2d 35, 40 (D.D.C. 2004).  As noted earlier, the Privacy Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual[.]"  5 U.S.C. § 552a(a)(5).  "A system of records exists only if the information contained within the body of material is both retrievable by personal identifier and actually retrieved by personal identifier."  Maydak v. United States, 630 F.3d 166, 178 (D.C. Cir. 2010) (internal quotation marks omitted).  Thus, the "disclosure of information derived solely from independent sources is not prohibited by the statute even though identical information may be contained in [a] system of records."  Fisher, 934 F. Supp. at 473.

The defendants do not dispute the plaintiff's assertion that the identified documents are "records" within the meaning of the Act,[7] but instead argue that "the hearing transcript, news articles, and personnel records were not contained in a Privacy Act 'system of records.'"[8]  Defs.'

---

[7] Again, the Act defines a "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his [or her] education, financial transactions, medical history, and criminal or employment history and that contains [the individual's] name or. . . other identifying particular assigned to the individual[.]"  5 U.S.C. § 552a(a)(4).

[8] As the Court noted earlier, the plaintiff in response argues that he "is not required to plead, at the pre-discovery Rule 12 stage, the names of specific 'systems of records' from which the leaked information was originally retrieved by the agency employees."  Pl.'s Opp'n at 8.  Although the plaintiff is correct that he need not plead the names of specific systems of records as he suggests, his allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); see

(continued . . .)

Mem. at 12.  On this issue, the plaintiff represents that "the personal information [disclosed] by the Miami USAO[,]" Compl. ¶ 69, was "transmitted [ ] via email correspondence[,]" id. ¶ 56, and "included [ ]: (i) [the p]laintiff's DOJ personnel file and timesheet; (ii) the April 10, 2018 hearing transcript . . . ; [and] (iii) the subject [ ] news articles," id. ¶ 69.  However, the plaintiff does not allege that the documents he believes were improperly disclosed were, from the inception of their creation, "under the control of [the defendant,]" nor does he allege that they were "retrieved by [his name] or by some identifying number, symbol, or other identifying particular assigned to [him]."  5 U.S.C. § 552a(a)(5).  As to the court hearing transcript, the plaintiff merely alleges that he "order[ed] and pa[id] for an electronic PDF copy of the April 10, 2018 hearing transcript[,]" Compl. ¶ 45, and then "emailed Lehr a copy of the [hearing] transcript[,]" id. ¶ 46, but he does not allege that the copy of the hearing transcript he sent to Lehr was "both retrievable by [a] personal identifier [from a system of records] and [was] actually retrieved by [a] personal identifier[,]" Maydak, 630 F.3d at 178 (emphasis omitted) (internal quotation marks omitted).  Accordingly, because the plaintiff "emailed Lehr [a] copy of the transcript[,]" Compl. ¶ 46, the transcript did not have to be "retrieved[,]" Maydak, 630 F.3d at 178, from a system of records, see 5 U.S.C. §552a(a)(5), because "email database[s] . . . do not constitute a system of records and, thus, [are] not subject to the Privacy Act's disclosure requirement in the first place[,]" Bernegger v. Exec. Off. for U.S. Att'ys, 334 F. Supp. 3d 74, 94

---

(. . . continued)

Glass v. U.S. Dep't of Just., 279 F. Supp. 3d 279, 280–281 (D.D.C. 2017) (dismissing a pro se plaintiff's Privacy Act claim where the Complaint failed to identify a system of records).  Here, it is not clear to the Court from the Complaint how the documents alleged by the plaintiff to have been disclosed by the defendants were "retrievable by personal identifier and actually retrieved by personal identifier."  Maydak, 630 F.3d at 178 (internal quotation marks omitted); see Glass, 279 F. Supp. 3d at 280 ("An actionable claim generally requires that 'a disclosure . . . be the result of someone having actually retrieved the 'record' from [a] 'system of records.'" (quoting Armstrong v. Geithner, 608 F.3d 854, 857 (D.C. Cir. 2010)).  Accordingly, the Court concludes that it cannot accept "th[e] inferences [the plaintiff attempts to draw on the subject because they] are not supported by the facts set out in [his] [C]omplaint[.]" Hettinga, 677 F.3d at 476 (citing Kowal, 16 F.3d at 1276).  Doing so would amount to nothing more than pure speculation.

(D.D.C. 2018) (internal quotation marks omitted); c.f. Henke, 83 F.3d at 1461 ("[T]he [C]ourt should view the entirety of the situation, including the agency's function, the purpose for which the information was gathered, and the agency's actual retrieval practice and policies." (emphasis added)). Similarly, the Court has no basis to conclude that the publicly available news articles allegedly disclosed by the defendants, see Compl. ¶ 69, were maintained in a system of records because the plaintiff has not adequately alleged that they were "retrieved by [his name] or by some identifying number, symbol, or other identifying particular assigned to [him,]" 5 U.S.C. § 552a(a)(5).[9]

The Court acknowledges that the remaining documents—viz., the "DOJ personnel file and timesheet[,]" Compl. ¶ 69—conceivably could have been retrieved from "a system of records," 5 U.S.C. 552a(a)(5). However, the plaintiff's Complaint does not contain sufficient factual information for the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. More specifically, the plaintiff makes only cursory references to the documents, see generally Compl., and alleges almost no facts regarding these documents aside from the fact that they were transmitted "(i) without [the p]laintiff's written consent; and (ii) without a warrant[,]" Compl. ¶ 91. However, the plaintiff's Complaint does not "contain

---

[9] The defendants also argue that (1) the "DOJ and SEC did not authorize the disclosures at issue and thus are not liable under the Privacy Act for the unauthorized disclosures by individual employees[,] Defs.' Mem. at 10; and (2) "with respect to certain disclosures by [the] DOJ and all disclosures by [the] SEC, [the p]laintiff has not pleaded that the agency disclosed any information to individuals outside the agency[,] id. In response, the plaintiff alleges that (1) the defendants are precluded from making such an assertion under the doctrine of judicial estoppel because, in the related case in Florida, the defendants have "successfully argued . . . that the Federal Tort Claims Act ('FTCA') shielded . . . the individual employees from civil liability" by asserting that the DOJ and SEC employees "were acting within the scope of their employment as employees of the United States[,] Pl.'s Opp'n at 4 (emphasis omitted); and (2) "the [C]omplaint unambiguously states that Privacy Act-protected records were transmitted, disseminated, and divulged to multiple third parties outside the USAO and SEC[,]" id. at 20. The Court notes that "the Privacy Act does not prohibit all nonconsensual disclosures of information found in an individual's records." Freeman v. Fed. Bureau of Prisons, No. 19-cv-2569 (CKK), 2020 WL 4673412, at *4 (D.D.C. Aug. 12, 2020). Nonetheless, for the reasons stated above, the Court finds that the plaintiff has not adequately alleged that the records at issue were maintained in a system of records under the Privacy Act and accordingly, need not reach either of these arguments.

sufficient factual matter[,]" Iqbal, 556 U.S. at 678, for the Court "to draw [a] reasonable

inference that the defendant is liable for the misconduct alleged[,]" id., as it is unclear from the

face of the Complaint whether the timesheet and DOJ personnel file were "retrieved by [a]

personal identifier[,]" Maydak, 630 F.3d at 178, and from a system of records, see 5 U.S.C.

§ 552a(a)(5).  Thus, even "accept[ing the plaintiff's allegations] as true, [he does not] state a

claim to relief that is plausible on its face[,]" Iqbal, 556 U.S. at 678 (internal quotation marks

omitted) (quoting Twombly, 550 U.S. at 570), because, as the Court explained above, the email

systems in which the hearing transcript and news articles were contained cannot be a system of

records within the meaning of the Privacy Act, see Bernegger, 334 F. Supp. 3d at 94.  Regarding

the documents where it is unclear how they were transmitted, i.e., the timesheet and DOJ

personnel file, the Court notes that it "need not accept inferences drawn by [the] plaintiff if those

inferences are not supported by the facts set out in the complaint[.]"  Hettinga, 677 F.3d at 476;

see also Defs.' Mem. at 12 ("While personnel records for DOJ employees are stored in the

Electronic Official Personnel Folder, which is a Privacy Act 'system of records,' the same is not

true for documents associated with interns' work.").  Accordingly, the Court must conclude that

the plaintiff has not plausibly alleged that the hearing transcript, news articles, timesheet, and

DOJ personnel file were retained in a system of records within the meaning of the Privacy Act.[10]

---

[10] In his opposition, the plaintiff also introduces for the first time a claim for failure to maintain agency records pursuant to 5 U.S.C. § 552a(g)(1)(C), which the plaintiff alleges does "not require that the subject records be contained in a 'system of records[.]'"  Pl.'s Opp'n at 8 (emphasis omitted).  Although "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss[,]" McManus v. District of Columbia, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007) (internal quotation marks omitted), "the Court may not disregard the plaintiff's policy or practice claim simply because it was raised in [the] opposition to the defendant[s]' motion to dismiss[,]" Francis v. Internal Revenue Serv., No. 18-cv-823, 2019 WL 13140448, at *3 (D.D.C. April 12, 2019).  However, the Court finds that this additional claim asserted outside of the Complaint must be dismissed because the plaintiff makes only cursory references to subsection (g)(1)(C), and fails to plausibly show the proximity between the alleged adverse actions taken against him, such as the rescinded job offer from the SEC, and the maintenance of the records by the agency defendants.  The plaintiff alleges that the defendants "made adverse [employment] determinations against [the p]laintiff[,]" Pl.'s Opp'n at 21, and "those adverse determinations were based upon inaccurate, incomplete, and irrelevant records[,]" id., but he does not provide a factual basis for his

(continued . . .)

**C.      Whether the Disclosures Adversely Affected the Plaintiff and Caused Actual Damages**

Next, assuming <u>arguendo</u> that the plaintiff has properly pleaded that the DOJ personnel file and timesheet were contained within a system of records, the Court still finds that the plaintiff has nonetheless failed to state a claim because he has not adequately alleged any actual damages that are causally related to the alleged dissemination of these documents.  To reiterate, to sustain a cause of action under the Privacy Act, the plaintiff must plausibly allege that "the disclosure adversely affected the plaintiff."  <u>Runkle</u>, 391 F. Supp. 2d at 238.  Thus, the Privacy Act "authorizes recovery from the [g]overnment for 'actual damages[,]'" <u>Fed. Aviation Admin. v. Cooper</u>, 566 U.S. 284, 291 (2012), but "limits . . . liability to harm that can be substantiated by proof of tangible economic loss[,]" <u>id.</u> at 303.  In other words, "[t]he Privacy Act does not allow a claim for damages based on reputational or emotional harm."  <u>Welborn v. Internal Revenue Serv.</u>, 218 F. Supp. 3d 64, 82 (D.D.C. 2016).  Moreover, "[t]he plaintiff must allege 'actual damages' <u>connected</u> to the adverse effect to 'qualify' under the [Privacy] Act."  <u>Doe v. U.S. Dep't of Just.</u>, 660 F. Supp. 2d 31, 49 (D.D.C. 2009) (quoting <u>Chao</u>, 540 U.S. at 620–27).

The plaintiff alleges that he "incurred significant pecuniary harm from his ongoing unemployment due to his inability to be barred [to practice law] in multiple states, and that [the d]efendants' serious [Privacy Act] violations were the 'but for' cause of that harm."  Pl.'s Opp'n

_____

(. . . continued)

position beyond the alleged "defamatory" nature of the April 10, 2018 hearing transcript and news articles, <u>see</u> Compl. ¶ 94, that is proximate enough to support the allegation that "the [agency] failed to maintain his records with the degree of accuracy necessary to assure fairness[,]" <u>Deters v. U.S. Parole Comm'n</u>, 85 F.3d 655, 657 (D.C. Cir. 1996); <u>see generally</u> Compl.; Pl.'s Opp'n.  The plaintiff does allege that the performance evaluation was "factually erroneous[,]" Compl. ¶ 64, but he fails to plausibly allege how the evaluation was inaccurate, or how "[the defendant]'s reliance on the inaccurate record[] was the <u>proximate cause</u> of [an] adverse determination[,]" <u>Deters</u>, 85 F.3d at 657 (emphasis added).  The Court, therefore, concludes that there is nothing in the plaintiff's Complaint or opposition to suggest that the DOJ and SEC had not "assured fairness to [the plaintiff]—the accuracy standard embodied in subsection[] . . . (g)(1)(C)"—in maintaining his USAO personnel file.  <u>Id.</u> at 658.  Accordingly, the Court finds that the plaintiff has not satisfied his pleading burden to establish that both agency defendants maintained records which were not accurate, relevant, or complete as required by the Privacy Act, and the Court must therefore dismiss this claim raised by the plaintiff only in his opposition.

at 22 n.15.  However, his allegations do not detail any "actual pecuniary or material damage[s,]" Welborn, 218 F. Supp. 3d at 82, that he has suffered that are attributable to the timesheet and his DOJ personnel file, but rather "reputational[,]" id., harm attributable to the content of the April 10, 2018 hearing transcript, see Compl. ¶ 48, that as the Court has explained above, the plaintiff has failed to allege was maintained in a system of records.  By the plaintiff's own account, the hearing transcript contains very damaging allegations made against him by Judge Moreno, that plausibly could be the reason for his ongoing unemployment and inability to be admitted to the state bars in Massachusetts and Florida.  See id. ¶ 32 ("Moreno publicly accused [the p]laintiff of criminal conduct and unethical behavior, made inappropriate comments concerning [the p]laintiff's father[,] . . . [and by the plaintiff's account] falsely claimed that [he] had corruptly abused his 'status' as a USAO intern[.]").  Importantly, the plaintiff's Complaint is dearth of any indication that Judge Moreno had access to the timesheet or DOJ personnel file alleged to have been disseminated by the defendants.  See generally id.  Furthermore, the damaging news articles, see id. ¶¶ 48–49, about the hearing conducted by Judge Moreno likewise could be contributing to the plaintiff's inability to obtain gainful employment.[11]  Although the plaintiff alleges that it was his supervisor who disseminated the news articles, see id. ¶ 54–59, for the reasons already stated, those records are not protected under the Privacy Act because the plaintiff has failed to plausibly allege that they were maintained in a system of records.  See Maydak, 630 F.3d at 178 ("A system of records exists only if the information contained within the body of material is both retrievable by personal identifier and actually retrieved by personal identifier." (internal quotation marks omitted)).

---

[11] In the motion hearing, the plaintiff argued that Judge Moreno made comments at the April 10, 2018 hearing which would indicate that he had access to the plaintiff's timesheet and DOJ personnel file.  However, his Complaint and his opposition to the motion to dismiss are silent on the issue.  See Compl.; Pl.'s Opp'n.  Therefore, the Court lacks a factual basis to conclude that his representation has any merit.

To be sure, the Court cannot readily identify any other "proof of tangible economic loss[,]" Cooper, 566 U.S. at 303, beyond the plaintiff's ongoing unemployment, to substantiate his claim that the harms suffered were the "result of [or proximately caused by] the refusal or failure" of the agency defendants to comply with the Act, Chichakli v. Kerry, 203 F. Supp. 3d 48, 57 (D.D.C. 2016), "as opposed to any other possible influences[,]" Krieger v. U.S. Dep't of Just., 562 F. Supp. 2d 14, 18 (D.D.C. 2008).  In regards to the plaintiff's lost job offer from the SEC, he acknowledges that he was told that "[the SEC] needed to rescind [the p]laintiff's SEC employment because [the p]laintiff had supposedly failed the SEC's background check."  Compl. ¶ 75.  Accepting that allegation as true, it is entirely plausible that his own conduct that was not protected by the Privacy Act contributed to his failed background check as opposed to any potential disclosure of information by either agency defendants in this case.  See deLeon v. Wilkie, No. 19-cv-1250 (JEB), 2020 WL 210089, at *7 (D.D.C. Jan. 14, 2020) (noting that "it [wa]s implausible for [the p]laintiff to claim that the disclosures of information—rather than his admitted [independent actions]—resulted in the monetary damages [he suffered]").  Simply put, the plaintiff has failed to adequately plead that the "DOJ personnel file and timesheet[,]" Compl. ¶ 69, caused "actual damages connected to the adverse effect[s that the plaintiff suffered, sufficient] to qualify under the [Privacy] Act[,]" Doe, 660 F. Supp. 2d at 49 (internal quotation marks omitted).  Accordingly, the Court must conclude that even assuming the DOJ personnel file and timesheet were maintained in a system of records, the plaintiff nonetheless has not plausibly stated a claim under the Privacy Act.

## D.   Whether The Retrieval Rule Applies to This Case

The Court last considers the defendants' argument that the plaintiff "has not alleged that the disclosed information was 'retrieved' from a Privacy Act 'system of records.'"  Defs.' Mem.

at 14.  The defendants note that "[n]ot only does the Privacy Act require that the records be

contained in a 'system of records,' but the records that are alleged to have been unlawfully

disclosed must also have been retrieved from that 'system of records.'"  Id.  The plaintiff's

response asserts that "this action is exempt from the [ ] 'retrieval' requirement" because "the

'retrieval' requirement does not apply in cases where the agency employees disclosing the

records also played a role in creating those same records."  Pl.'s Opp'n at 16.  Even assuming

arguendo that the documents may have been maintained within a system of records, the Court

concludes that the retrieval rule exception does not apply in this case.

        "The mere capacity to retrieve records by the name of an individual is not sufficient to

create a ['|system of records.[']" Chang, 314 F. Supp. 2d at 40.  Rather, "[a] record must . . . in

practice [be] retrieved by an individual's name or other personal identifier[,]" Bartel, 725 F.2d

at 1408 n.10, and thus "a disclosure rarely implicates the Privacy Act . . . so long as the

disclosing official obtained the information disclosed from other sources not covered by the

Privacy Act, such as the disclosing official's personal knowledge[,]"  U.S. Dep't of Treasury,

706 F. Supp. 2d at 6–7. The so-called "retrieval rule" arose with the understanding that

>       (1) it would create an intolerable burden to impose liability for disclosures of
>       independently acquired information, and (2) doing so would extend the Act
>       beyond its purpose of preclud[ing] a system of records from serving as the source
>       of personal information about a person that is then disclosed without the person's
>       prior consent.

Id. at 7 (internal quotation marks omitted) (quoting Doe v. U.S. Dep't of Veterans Affs., 519

F.3d 456, 461 (8th Cir. 2008)).

        The plaintiff invokes "[the Bartel] exception to the retrieval rule for cases [ ] wh[ere] an

inflexible application of that rule would permit agencies to flout the purposes of the Privacy

Act."  Id. (citing Bartel, 725 F.2d at 1411).  "In particular, the retrieval rule will not protect an

agency from liability under the Privacy Act when an official disclose[s] his [or her] personal recollection of an investigation that he [or she] had instituted, despite the fact that he [or she] may not have reviewed the actual investigatory record before doing so."  Id. at 8 (quoting Pilon v. U.S. Dep't of Just., 73 F.3d 1111, 1118 (D.C. Cir. 1996)) (internal quotation marks omitted); see also Bartel, 725 F.2d at 1411 ("[I]t would hardly seem an intolerable burden to restrict an agency official's discretion to disclose information in a record that he [or she] may or may not have read but that he [or she] had a primary role in creating and using, where it was because of that record-related role that he [or she] acquired the information in the first place." (internal quotation marks omitted)).  However, "Bartel's exception to the retrieval rule is a narrow one that should be applied only in cases turning on similar facts and raising similar concerns[,]" U.S. Dep't of Treasury, 706 F. Supp. 2d at 8, and its framework should only be applied when it has first been established that the plaintiff cannot satisfy the "retrieval standard[,]" Bartel, 725 F.2d at 1409.

Here, because the plaintiff has failed to satisfy the retrieval standard required by the Privacy Act, it is appropriate to consider whether "[the] narrow exception to the retrieval requirement" created in Bartel applies.  Paige v. Drug Enf't Admin., 665 F.3d 1355, 1361 (D.C. Cir. 2012).  And, upon review of the plaintiff's Complaint, the Bartel exception does not apply due to the fact that "[this] case[] [does not] turn[ ] on similar facts and [does not] rais[e] similar concerns[,]" U.S. Dep't of Treasury, 706 F. Supp. 2d at 8, as those in Bartel.  Specifically, in Bartel, "[the] agency employee responsible for creating [the] covered record later disclose[d the] information contained therein based on his personal knowledge of the records [ ] without actually [having] retriev[ed] it from the agency's system of records."  Paige, 655 F.3d at 1361 (citing Bartel, 725 F.2d at 1407–11).  Here, the defendants are correct that neither "the public hearing

transcript, newspaper articles[,] . . . performance appraisal of [the plaintiff] as an intern[, nor his timesheet] can be found in a system of records."  Defs.' Reply at 11.  Moreover, the plaintiff fails to adequately allege that the information contained in these records, i.e., the hearing transcript and newspaper articles, were created by employees of either agency defendants and then disseminated as was the case in Bartel.  See generally Compl.

The Court acknowledges again that the performance evaluation, see Compl. ¶¶ 64–66, conceivably could possibly have been created by the defendants, but the plaintiff's explanation about the document is difficult to square with his other allegations.  Specifically, the plaintiff notes that "the Miami USAO falsely represented [to the University of Miami School of Law] [ ] that [the p]laintiff's legal writing and research abilities were not 'up to par[.]'"  Id. ¶ 65.  However, the plaintiff merely contends that the performance evaluation was "defamatory and factually-erroneous[,]" id. ¶ 64, without any further indication about the record, whether it was or could have been maintained in a system of records, or how he was harmed by the alleged disclosure.  Such an allegation is not sufficient to state a claim under the Privacy Act, as "[n]ot every nonconsensual disclosure of information contained in Privacy Act-protected records constitutes a violation of the Privacy Act[,]" U.S. Dep't of Treasury, 706 F. Supp. 2d at 6, assuming the performance evaluation was even maintained in a system of records.

Furthermore, information such as the plaintiff's "legal writing and research abilities[,]" Compl. ¶ 65, would appear to have come from "sources not covered by the Privacy Act, such as the disclosing official's personal knowledge[,]" U.S. Dep't of Treasury, 706 F. Supp. 2d at 7.  This alleged disclosure does not implicate the Bartel exception because assuming that "[the] official disclose[d] h[er] personal recollection of an investigation[, or in this instance, the performance evaluation] that [s]he had instituted[,]" id. at 8 (quoting Pilon, 73 F.3d at 1118),

there is no plausible showing that the "contents and conclusions[,]" id., of the evaluation "[we]re

part of and were retrieved from any record which is contained in a system of records[,]"

Armstrong, 608 F.3d at 860; see id. (holding that the Bartel exception did not apply where the

alleged disclosure did not relate to information maintained in a system of records).  Accordingly,

the Court must find that the Bartel exception does not apply to this case.

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendants' motion

to dismiss the plaintiff's Complaint.

**SO ORDERED** this 10th day of July, 2024.[12]

REGGIE B. WALTON
United States District Judge

---

[12] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.